**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**J6 HISTORICAL SOCIETY,**
c/o Law Office of Jonathan Gross
2833 Smith Ave., Suite 331
Baltimore, MD 21209,
Plaintiff,

Case No. 1:26-cv-2811

v.

**JEANINE PIRRO**, in her official
capacity as UNITED STATES ATTORNEY
FOR THE DISTRICT OF COLUMBIA,
601 D Street, NW
Washington, DC 20530,
Defendant.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff J6 Historical Society ("Plaintiff" or "the Society"), an unincorporated association, by and through undersigned counsel, brings this Complaint for Declaratory Judgment against Defendant Jeanine Pirro, in her official capacity as United States Attorney for the District of Columbia ("the Government"), and states as follows:

### INTRODUCTION

1.      January 6, 2021 has become the subject of the largest single prosecutorial effort in the history of the Department of Justice — nearly 1,600 criminal cases arising from a single day. In case after case, before any defendant could examine a single page of discovery, the government moved for — and obtained — a boilerplate protective order sealing the evidence of what actually happened that day from the defendants themselves, from the press, and from the public.

2.      The protective orders were not tailored to any individual defendant or any individualized showing of harm. They were, and remain, a boilerplate form: the same paragraphs, the same designations, the same restrictions, copied from case to case for every defendant.

3.      On March 22, 2025, defendant Ryan Zink moved this Court to lift the protective order entered in his case, arguing that the public and press have a First Amendment right of access to the discovery underlying the January 6 prosecutions. *See United States v. Zink*, No. 21-cr-00191-

1

JEB (D.D.C.), ECF No. 152. On April 9, 2025, Chief Judge Boasberg granted that motion and lifted the protective order. *Id.,* Minute Order of Apr. 9, 2025.

4. Other January 6 defendants — including Jared Wise and William Pope — separately challenged the same boilerplate order as overbroad, burdensome, and untethered to any case-specific showing of good cause, exposing in detail how the order operates: unilateral government discretion to designate materials "Sensitive" or "Highly Sensitive," supervised-only viewing of the most significant evidence, prohibitions on downloading or independently retaining copies, and burdens that in practice required defendants to travel hundreds of miles ad spend thousands of dollars for only limited viewing of their own case discovery under the supervision of counsel.

5. Meanwhile, outside the criminal docket entirely, Judicial Watch was forced to litigate a Freedom of Information Act lawsuit for more than two years merely to obtain body-worn camera footage from the D.C. Metropolitan Police Department documenting the same events. A D.C. court rejected the District's attempt to broadly redact that footage, found the asserted privacy interests "little more than de minimis," and ordered disclosure — leading to the release, in July 2026, of more than 1,000 hours of footage across roughly 1,630 videos. *See Judicial Watch v. District of Columbia*, No. 2024-CAB-003453 (D.C. Super. Ct.).

6. That is precisely the outcome this lawsuit seeks to make unnecessary going forward. This Court has already found, in *Zink*, that the protective order shielding January 6 discovery is no longer justified. The Government should not be permitted to observe that ruling in one case while continuing, case by case, to force defendants, researchers, and watchdog organizations to fight the identical battle over and over — in this Court, in the D.C. courts, and through FOIA — at enormous and unnecessary cost to judicial resources, to litigants, and to the Government itself. Plaintiff brings this action for a declaratory judgment clarifying that the January 6 protective order regime is lifted and that the public is entitled to access the discovery underlying these prosecutions.

## JURISDICTION AND VENUE

7.      This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the First Amendment to the United States Constitution. The Court is further authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8.      Venue is proper under 28 U.S.C. § 1391(e) because Defendant resides in this district for purposes of this action and a substantial part of the events giving rise to this action — including the entry of the protective orders at issue — occurred in this district.

## PARTIES

9.      Plaintiff J6 Historical Society is an unincorporated association of individuals prosecuted in connection with the events of January 6, 2021, and concerned citizens, organized for the purpose of ensuring that the primary source materials documenting January 6 — video footage, photographs, and related discovery — remain available for historical research, public education, and public accountability. The interests asserted in this action are germane to the Society's organizational purpose, its members would have standing to sue in their own right, and the declaratory relief requested does not require the participation of individual members in this action. See Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343 (1977).

10.     Defendant Jeanine Pirro is the United States Attorney for the District of Columbia and is sued solely in her official capacity. Her office is responsible for the prosecution of the January 6 cases and for the protective orders entered in connection with them.

## FACTUAL BACKGROUND

11.     Beginning in early 2021, the government moved for a protective order in nearly every January 6 case before any defendant had an opportunity to view discovery. *See, e.g., United States v. Zink*, No. 21-cr-00191-JEB (D.D.C.), ECF No. 18 (Motion for Protective Order, filed Apr. 19, 2021); *United States v. Wise*, No. 1:23-cr-00184-RDM (D.D.C.), ECF No. 14.

12.     The proposed orders were, and are, materially identical across cases. As defendant Jared Wise documented, the government's motion for a protective order in his case was "largely a

copy-and-paste job from prior January 6 cases," using language traceable to filings from early 2021 in unrelated cases such as *United States v. Alberts*, No. 1:21-cr-00026-CRC, and protective orders such as the one entered in *United States v. McCaughey*, No. 1:21-cr-00111-RMM. *Wise*, ECF No. 15 at 3–4. By the time the government sought the order in Mr. Wise's case in mid-2023, it had used the same template in approximately 1,000 prior January 6 cases. *Id.* at 3 (citing Gov't Mot., ECF No. 14 at 1).

13.     The standard order grants the government unilateral, effectively unreviewable discretion to designate discovery as "Sensitive" or "Highly Sensitive," using an illustrative list of categories that the order itself states are not exhaustive ("include but are not limited to"). *Wise*, ECF No. 11-1 (Ex. A) at 1. Material designated "Highly Sensitive" — which includes U.S. Capitol Police CCTV surveillance footage — may not be shown to the defendant except under the direct, contemporaneous supervision of defense counsel or defense staff, delivered through a cloud-based system that forbids downloading. Id. at 3–4.

14.     In practice, that structure has imposed serious burdens on defendants unconnected to any individualized showing of risk. Mr. Wise, who lived approximately 130 miles from his public defender's office, would have faced a six-hour round trip through mountain passes — impassable at times in winter — merely to view discovery in his own case, despite having no criminal history and thirteen years of prior service as an FBI agent with a Top Secret/SCI clearance. *Wise*, ECF No. 11 at 4–6; ECF No. 15 at 5. William Pope, another January 6 defendant proceeding pro se, faced comparable technological and logistical burdens attempting to view Highly Sensitive material from Topeka, Kansas, while his standby counsel was based in Washington, D.C. *United States v. Pope*, No. 1:21-cr-00128-RC (D.D.C.), ECF No. 103 at 8–9.

15.     Under Rule 16(d)(1) of the Federal Rules of Criminal Procedure, a protective order may issue only on a showing of "good cause," which requires the government to make a "particularized, specific showing" weighing (1) whether disclosure would pose a hazard to others, (2) whether the defendant would be prejudiced by a protective order, and (3) whether the public's

4

interest in disclosure outweighs the possible harm. United States v. Dixon, 355 F. Supp. 3d 1, 4 (D.D.C. 2019).

16. Defendants have challenged the order as untethered to any case-specific showing of good cause. Mr. Wise argued, and the government did not meaningfully dispute, that its boilerplate motions fail this standard: they recite generic concerns about witness safety, national security, and confidential sources without a single fact particular to the case at hand, and they apply identically to defendants accused of assaulting police officers with weapons and to defendants, like Mr. Wise, accused of no violence or direct encounters with police whatsoever. *Wise*, ECF No. 11 at 4–6; ECF No. 15 at 4–6 (citing, *e.g., United States v. Palmer*, No. 1:21-cr-00328-TSC, and *United States v. Fitzsimons*, No. 1:21-cr-00158-RC).

17. Mr. Zink's motion to lift the protective order in his case went further, arguing that the public and press have an independent First Amendment right of access to the discovery underlying the January 6 prosecutions — a right rooted in *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980), *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982), and *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986), and in the common-law right of access recognized in *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597 (1978). *Zink*, ECF No. 152 at 2–4. Mr. Zink noted that this interest is heightened, not diminished, by the passage of time and by the government's own disclosure of the Special Counsel's January 6 report. *Id*. at 5–6.

18. On April 9, 2025, with the government not opposing the motion, Chief Judge Boasberg granted it and ordered that the protective order in *Zink* "is LIFTED." *Zink*, Minute Order of Apr. 9, 2025 (ECF entry following ECF No. 152).

19. Despite the ruling in *Zink*, the government has not extended equivalent relief to other January 6 defendants, to researchers, or to the public at large. The global discovery databases referenced throughout the January 6 litigation — including the Evidence.com video repository and the Relativity database, together comprising millions of files — remain restricted under materially identical protective orders in the balance of the January 6 docket. *See Pope*, ECF No. 103 at 1 n.1 (describing the scope of the global discovery databases).

20.    On July 10, 2026, Mr. Pope filed a notice in his own case documenting exactly this dynamic. He advised the Court that, following the D.C. Superior Court's April 30, 2026 order in *Judicial Watch* — which observed that "FOIA is designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny,'" *Washington Post Co. v. Minority Bus. Opportunity Comm'n,* 560 A.2d 517, 521 (D.C. 1989) — Judicial Watch had published the MPD body-camera recordings online. Mr. Pope further noted that although the protective order in his case originally represented, in a footnote, that body-worn camera footage would not be designated Sensitive or Highly Sensitive, a significant number of MPD bodycam recordings were nonetheless so designated in his discovery — and that Paragraph 11 of the protective order independently excludes from its coverage any material that "later become[s] public [or is] part of the public court record." *Pope*, ECF No. 417 at 1–2. Mr. Pope accordingly notified the Court that his possession of the more than 2,700 MPD body-camera recordings identified in the government's own discovery indexes was no longer subject to the protective order's restrictions. *Id*. at 2.

21.    Unlike every other January 6 defendant, Mr. Pope remains subject to an even more restrictive version of the protective order than the one this Court lifted in *Zink*. In Order No. 239, the Court granted a government cross-motion requiring Mr. Pope — notwithstanding the eventual dismissal of every charge against him — to return, after his case concluded, any discovery the government had designated Sensitive or Highly Sensitive, a condition the government has not sought to impose in other January 6 cases. *Pope*, ECF No. 417 at 2. That requirement remains the subject of a pending appeal before the D.C. Circuit, No. 25-3102. *Id*. The government's pursuit of more restrictive discovery terms against a defendant whose entire prosecution ended in dismissal — counts the government could not particularize were dismissed pre-trial, one was dismissed following *United States v. Fischer*, and the remaining charges were dropped outright — is difficult to reconcile with any consistent, case-specific good-cause showing, and instead illustrates the arbitrariness that Plaintiff's members and the public continue to confront.

22.    The public interest underlying Plaintiff's claim is not hypothetical. In *Judicial Watch v. District of Columbia*, No. 2024-CAB-003453 (D.C. Super. Ct.), Judicial Watch was required to litigate for more than two years — filing suit in June 2024 after an August 2021 FOIA request was denied — to obtain body-worn camera footage from the Metropolitan Police Department documenting the events of January 6. The District argued that it needed to blur the faces and mute the voices of every non-officer in the footage, at an estimated cost exceeding $1.5 million.

23.    Following a January 8, 2026 hearing, the D.C. Superior Court rejected that position in an April 30, 2026 order, holding that any privacy interest in the footage was "little more than de minimis" given that the events "unfolded largely in public and [were] already extensively recorded and broadcast in real time," that FOIA "is designed to 'pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny,'" *Washington Post Co. v. Minority Bus. Opportunity Comm'n*, 560 A.2d 517, 521 (D.C. 1989), and that the public interest in disclosure outweighed the government's asserted privacy concerns. The Metropolitan Police Department subsequently released more than 1,000 hours of footage across approximately 1,630 videos in July 2026.

24.    That two-year, multi-million-dollar dispute over material already publicly known to exist — material of exactly the kind still restricted under the protective orders in the pending January 6 criminal dockets — illustrates precisely the waste of judicial, litigant, and government resources that a declaratory judgment in this case would avoid. Every additional January 6 defendant, journalist, or member of the public who must separately litigate access to this material — whether through a motion to lift a protective order, as in Zink, through an individual notice, as in Pope, or through FOIA, as in Judicial Watch — repeats a dispute this Court has already resolved once.

7

## CLAIM FOR RELIEF

## COUNT I — Declaratory Judgment: First Amendment Right of Public Access to Judicial Proceedings and Records (28 U.S.C. §§ 2201–2202; U.S. Const. amend. I)

25.     Plaintiff incorporates by reference the allegations set forth above.

26.     The public and the press possess a qualified First Amendment right of access to criminal proceedings and to the judicial records connected to them, grounded in both the experience of historical openness in criminal prosecutions and the logic that public access plays a significant positive role in the functioning of the process at issue. *Richmond Newspapers*, 448 U.S. at 573; *Press-Enterprise Co.,* 478 U.S. at 8–9; *see also Nixon*, 435 U.S. at 597 (common-law right of access to judicial records).

27.     An actual, live controversy exists between the parties. This Court has already held, in *Zink*, that the protective order governing discovery in the January 6 prosecutions is not justified and must be lifted. The government has not applied that ruling beyond the *Zink* case, leaving Plaintiff's members and the public subject to uncertain about materially identical restrictions in the balance of the January 6 docket — and, as to Mr. Pope, subject to a more restrictive version of that order than any other January 6 defendant faces — and leaving global discovery databases such as Evidence.com and Relativity inaccessible to the public notwithstanding the passage of more than five years since January 6, 2021, the conclusion of the vast majority of January 6 prosecutions, and the public release of the Special Counsel's own report on the same events.

28.     The government cannot show good cause, under the *Dixon* factors or otherwise, for continuing to withhold this material from the public: (1) the passage of time, the closure of nearly all January 6 cases, and the Capitol Police's own upgrades to its security systems have eliminated or substantially diminished any hazard that disclosure would once have posed; (2) continued restriction prejudices both defendants, who remain limited in their ability to participate in their own defense and post-conviction proceedings, and the public, which is denied access to the primary record of a historic event; and (3) the public's interest in disclosure — as this Court itself recognized in lifting the protective order in *Zink*, and as the D.C. Superior Court separately

recognized in ordering disclosure of MPD body-camera footage in *Judicial Watch* — outweighs whatever residual interest the government asserts in continued secrecy.

29.     Plaintiff is entitled to a declaration, pursuant to 28 U.S.C. §§ 2201–2202, that the protective order regime governing discovery in the January 6 prosecutions is no longer supported by good cause and is lifted, and that the public is entitled to access the discovery materials described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

a.     Declare that the protective order entered in United States v. Zink, No. 21-cr-00191-JEB, and the materially identical protective orders entered throughout the January 6 prosecutions, are no longer supported by good cause under Federal Rule of Criminal Procedure 16(d)(1) and are lifted;

b.     Order that the government provide each January 6 defendant with an unrestricted copy of his or her individual case-specific discovery file;

c.     Order that the government make the global January 6 discovery databases — including, but not limited to, Evidence.com and the Relativity database — accessible to the public for research and historical purposes;

d.     Award Plaintiff its costs incurred in this action; and

e.     Grant such other and further relief as the Court deems just and proper.

Dated: _Aug 7, 2026_

Respectfully submitted,

Jonathan Gross
D.C. Bar No. 0162
Law Office of Jonathan Gross
2833 Smith Ave., Suite 331
Baltimore, MD 21209
(443) 813-0141
jonathansgross@gmail.com

*Attorney for Plaintiff*

9